IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JODI A. NITSCHKE,                                          CV 06-1234-AA
                        Plaintiff,

v.                                                         OPINION AND
                                                          ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                        Defendant.
_____

AIKEN, Judge:

## INTRODUCTION

Plaintiff Jodi Nitschke ("Nitschke") brings this action for judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

her application for Social Security disability insurance benefits ("DIB") under Title II and

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court

has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's

final decision is reversed and remanded for the calculation and award of benefits.

BACKGROUND

Nitschke, who is Native American, was 46 years old on the date of the hearing in April

2006. She completed tenth grade. She worked in the past as an assembly worker, a telemarketer,

a bingo runner, a restaurant cook, a machine operator, and a bindery worker. AR 21, 72.[1]

Nitschke alleges disability due to post-traumatic stress disorder ("PTSD"), disassociative

episodes related to PTSD, hepatitis C, pain in her back, hands and feet, and drug and alcohol

problems. AR 19, 68. She claims these conditions cause the following symptoms:  social and

emotional difficulties working around people; frequent disassociation episodes that cause her to

lose hours at a time or black out; emotional agitation including stuttering, losing thought process,

fear and anger; nightmares; inability to sleep and fear of going to sleep; and difficulty standing

and sitting. AR 68-70, 265. Nitschke was physically and sexually tortured as a child, and has

scars on her breast and genitalia as a result. AR 263. She testified that she has flashbacks to

those episodes. Id. Nitschke was also in a physically and psychologically abusive marriage until

1990 and was hospitalized for injuries inflicted by her former husband. AR 206. The ALJ noted

that she also has a history of exposure to racial and ethnic violence. AR 17.

Nitschke testified that she cannot work because of apprehension that leads to emotional

breakdown, a history of confrontations in the workplace, inability to get along with people, fear

and anger. AR 248-49.

Nitschke filed applications for DIB and SSI benefits on September 19, 2003, alleging

disability beginning December 31, 2001. Nitschke's application was denied initially and upon

---

[1]Citations are to the page(s) indicated in the official transcript of the administrative record
filed with the Commissioner's Answer.

Page 2 - OPINION AND ORDER

reconsideration. On October 18, 2005, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated April 24, 2006, the ALJ found Nitschke not disabled and therefore not entitled to benefits. The Appeals Council denied Nitschke's request for review, making the ALJ's decision the final decision of the Commissioner.

STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039 (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

MEDICAL RECORDS

The medical records accurately set forth Nitschke's medical history as it relates to her claim. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, only a brief summary appears below.

Nitschke has a history of drug and alcohol abuse. In May 2001, she reported that she had been sober for eight years. AR 17, 253. She used street drugs including heroin and cocaine, though testified that she had been clean for a number years prior to 2001. She participated in a drug treatment program in 1993, and attended Alcoholics Anonymous and Narcotics Anonymous meetings. AR 255.

Nitschke was diagnosed with PTSD in 1996. She was a passenger in a motor vehicle that was rearended by a Tri-Met bus, causing minor physical injuries that triggered her PTSD. AR 210. Subsequently she underwent individual psychotherapy on and off for a number of years, up to the time of the hearing. Her PTSD was noted to cause prolonged aggravation of anxiety and rage, sleep disruption resulting from nightmares, persistent insomnia, violent impulses and fantasies, flashbacks, intrusive thoughts with violent content, psychotic decompensation, anger flashes and hyperarousal. AR 148, 149, 151, 159, 160, 168, 206. She was hospitalized in October 2005 for suicidal ideation and was diagnosed at that time with depression and substance abuse. AR 197.

Nitschke was diagnosed with hepatitis C in 1993 and has had no treatment. Her aches, pains and arthralgias may be the result of hepatitis C. AR 167. Nitschke has a history of respiratory problems including recurrent pneumonia, bronchitis and sinusitis.

In 2004, Nitschke was diagnosed with anxiety and depression; post-traumatic stress

Page 4 - OPINION AND ORDER

disorder; diffuse hand pain and headaches of unknown etiology; back pain without evidence of

neurologic defects; right knee pain without any evidence of internal derangement; hepatitis C;

right first metatarsophalangeal joint discomfort with slight deformity of the joint;[2] and drug

addiction, in recovery. AR 167. Nitschke has been placed on a number of prescription drugs

including Doxepin,[3] Atrovent, Vicodin, Tequin, Trazadone, and Albuterol. Nitschke testified

that she was taking Doxepin at the time of the hearing. AR 249. She also testified that she was

not able to afford her medication at times. AR 250.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999):

Step One. The ALJ determines whether claimant is engaged in substantial gainful

activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity,

the ALJ proceeds to evaluate claimant's case under step two. 20 C.F.R. §§ 404.1520(b),

416.920(b).

Step Two. The ALJ determines whether claimant has one or more severe impairments

significantly limiting him from performing basic work activities. If not, the claimant is not

disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's

---

[2]This condition refers to Nitschke's big toe which she claims has a bulging knuckle and when swollen and painful prevents her from putting on a shoe and walking. AR 78.

[3]Doxepin is a psychotropic agent with anti-depressant and anti-anxiety properties.

case under step three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. The ALJ next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Step Five. The ALJ determines whether claimant is able to do any other work. If not, claimant is disabled. If the ALJ finds claimant is able to do other work, the ALJ must show a significant number of jobs exist in the national economy that claimant can do. The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the ALJ demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the ALJ does not meet this burden, claimant is disabled. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

THE ALJ'S FINDINGS

At step one, the ALJ found that Nitschke had not engaged in substantial gainful activity at any time relevant to this decision. AR 16. This finding is not in dispute. At step two, the ALJ found that Nitschke had the following severe impairments: an anxiety disorder, drug addiction, and liver disease. Id. This finding is not in dispute. At step three, the ALJ found that Nitschke's impairments were not severe enough to meet or medically equal any of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17. This finding is in dispute.

Next, the ALJ assessed Nitschke as having the residual functional capacity to perform simple tasks not involving much public contact, and found that she should avoid contact with unsocialized (less civilized), marginal individuals. AR 18. This finding is in dispute. At step four, the ALJ found that Nitschke could not perform her past relevant work. AR 21. This finding is not in dispute. At step five, relying on vocational expert testimony, the ALJ found that Nitschke could work as a housekeeper and as a garment sorter. AR 22. This finding is in dispute.

DISCUSSION

Nitschke contends that the ALJ erred by:  (1) improperly rejecting the medical opinions of Dr. Henderson; (2) finding that Nitschke's impairments did not meet or equal a listing at step three; (3) improperly rejecting Nitschke's testimony based on credibility; (4) improperly rejecting Hibbard's lay witness testimony; and (5) making an improper finding at step five. Because the first two issues are dispositive, the final three issues need not be addressed.

Medical Opinions of Dr. Henderson

Robin G. Henderson, M.D. was Nitschke's treating psychiatrist. Nitschke first saw Dr.

Page 7 - OPINION AND ORDER

Henderson in January 1996, based on a referral from an insurance company as a result of an automobile accident. AR 204-211. The ALJ considered and discredited some of the opinions of Dr. Henderson, specifically referring to a July 2004 opinion that Nitschke's mental impairment meets a listing, and an opinion of February 2006 that Nitschke's PTSD would prevent her from working in any setting. AR 18, 20. Nitschke contends that the ALJ improperly rejected Dr. Henderson's medical opinions.

In the Ninth Circuit, "where [a] treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester v. Chater, 81 F.3d 821, 830, (9th Cir. 1995), quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). "Clear and convincing reasons" are also required to reject the treating doctor's ultimate conclusions. Id., citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). If a treating physician's opinion is contradicted by that of another physician, specific and legitimate reasons supported by substantial evidence in the record are required to reject the treating physician's opinion. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Holohan, 246 F.3d at 1202; 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, the court credits that opinion as a matter of law. Lester, 81 F.3d at 834.

In his initial examination of Nitschke in January and February 1996, Dr. Henderson diagnosed Nitschke as suffering from PTSD and noted that the recent motor vehicle accident had

had activated her PTSD. AR 206, 210. Dr. Henderson noted his own expertise in the area of

PTSD treatment based on his work with Vietnam veterans, and that he was able to gain

Nitschke's trust during her early therapy sessions. AR 208. He wrote that he had seen Nitschke

for four appointments initially, the last being February 13, 1996, and at a later time noted that her

treatments with him that were paid for by the auto insurance claim lasted several months. AR

148, 205. While he provided some descriptions of the physical and psychological traumas

Nitschke had experienced as a result of familial and marital relationships, including what he

described as beatings to grisly to detail, he explained, "[t]o preserve at least some modicum of

privacy for this woman I will provide only summary generalizations." AR 208. He noted that

her major symptom was severe depression, sometimes with suicidal feelings and impulses. AR

212.

  In January 2003, Dr. Henderson described Nitschke as successfully repressing the

violence in her past however when something would remind her of the past, "nightmares and

accompanying intrusive thoughts with violent content would assume center stage once again in

her conscious perception." AR 148. After working with her for several months, Dr. Henderson

explained that Nitschke would come back for one to three sessions when new life events

aggravated PTSD symptoms. AR 148. He explained that she could not afford to return more

frequently for treatments. Dr. Henderson described a new relationship for Nitschke with a

partner who was not physically violent but had a sharp temper as reactivating her PTSD which

lead to nightmares, sleep disruption which evolved into persistent insomnia and sleep

deprivation. AR 149. He described her as "on the edge of a psychotic decompensation." AR

149. Nitschke described what she had done to her first husband years ago to "get even with him"

and how she was now unable to put those images out of her mind.  AR 149.  Relying on his

treatment approach with combat veterans, Dr. Henderson prescribed doxepin and assessed

Nitschke with a GAF of 50.  AR 149.  He assessed other symptoms including anger flashes,

hyperarousal, aggravated intrusive recollections, and trauma nightmares.  Id.  Dr. Henderson

noted that weekly psychotherapy was planned.  AR 150.

In October 2003, in response to a request from the Office of Vocational Rehabilitation,

Dr. Henderson noted that he never releases session psychotherapy notes, but instead generates

reports to third parties as the need arises.  AR 151.  He reaffirmed this policy several times

throughout the record.  Dr. Henderson described two employment situations where PTSD was

triggered by Nitschke's treatment at the hands of co-workers.  AR 151-52.  In the first instance

she was verbally and physically harassed which resulted in prolonged aggravation of anxiety and

rage at the worksite leading to sleep disruption from nightmares, and regression.  AR 151.  In the

second instance she was the butt of repeated ethnic slurs which stirred very violent mental

images and impulses.  AR 152.  Nitschke was using street drugs to hold herself in control after

not being able to afford prescription medication.  He opined that Nitschke should be placed

where she would not "have to rub shoulders with un-socialized (or less civilized) marginal or

"underclass" individuals who stir up her PTSD."  AR 152.  In that same month, in a letter to

DDS, he noted that Nitschke's trigger events for PTSD included verbal abuse that can cause

flashbacks, intrusive recollection, violent nightmares with serious sleep disruption, and

hyperarousal with violent impulses.  AR 160.  Dr. Henderson explained that this symptomatology

has created significant problems in the kind of work settings where Nitschke was capable of

finding employment.  AR 160.

Page 10 - OPINION AND ORDER

In July 2004, Dr. Henderson evaluated whether Nitschke's anxiety disorder met a listing under § 12.06. He found that she met the "A" criteria in that she had "generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity (sick to stomach with diarrhea upon awakening from an anxiety dream), apprehensive expectation (of losing control), and vigilance and scanning (typical to PTSD in symptom "triggering" environments)." AR 193-94. He also found that she fears of provoking situations, recurring panic, and recurrent intrusive recollections, which are also part of the category A listing criteria. For the "B" criteria, Dr. Henderson found that Nitschke had marked difficulties in maintaining social functioning necessary in work situations, and repeated episodes of deterioration and decompensation in work settings. AR 194. Dr. Henderson stressed that after these episodes, Nitschke would often be left with lingering rage that would last for days afterwards. Id. Dr. Henderson also noted that when she was able to afford treatment, Nitschke would use her sessions with him to aid in her attempts to work and make a living. AR 193.

After considering Dr. Henderson's opinions and according some of them weight, the ALJ discredited Dr. Henderson's conclusion that Nitschke mental impairment of anxiety disorder met the criteria of listing § 12.06. AR 18. The ALJ erred in dismissing Dr. Henderson's opinion. First, the ALJ noted that Dr. Henderson did not supply treatment records or the frequency of Nitschke's visits. The court notes that even after the hearing when he received a further request from Nitschke's attorney, Dr. Henderson explained once again that he never releases his chart notes because he would find doing so damaging to his patients, and because it would violate the privacy of the treatment relationship. AR 200. Instead he provides lengthy reports with significant detail as to clinical observations, symptoms and other medical evidence. Under

Social Security regulations, medical evidence to establish the existence of a medically determinable impairment consists of symptoms, signs, and laboratory findings. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00B. "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, as described by an appropriate medical source." Id. Symptoms, which are the claimant's own description of mental impairment, and signs "generally cluster together to constitute recognizable mental disorders in the listings." Id. Here, the record contains seven separate reports from Dr. Henderson over a ten-year period with over twenty, single-spaced pages of medical evidence in the form of symptoms and signs as contemplated by the regulations, describing Nitschke's mental impairments. His reports also provide sufficient detail as to the frequency of her visits. This court finds that Dr. Henderson's presentation of medical evidence was sufficient based on the reports he submitted. See Rodriguez v. Bowen, 876 F.2d 759, 762-63 (9th Cir. 1989) (physician's subjective medically acceptable diagnoses are sufficient to support his findings).

Next, the ALJ found that two of Dr. Henderson's reports contradicted a finding of disability: his report of January 2003 that Nitschke had a GAF of 50 during a phase of acute regression but was "typically better than this"; and his report of October 2003 that Nitschke's affect was appropriate and that she demonstrated no acute disturbance suggesting psychosis. AR 18, 149, 160. However, in that same report of October 2003, Dr. Henderson noted a steady decline in Nitschke's psychological state over the years he had been treating her, and that age and declining circumstances have aggravated her PTSD. AR 160. Thus the ALJ took medical information out of context. A claimant's improvement during years of treatment should not be

used to undermine a treating physician's ultimate conclusions. See Holohan, 246 F.3d at 1205 (explaining that a physician's statements must be read in the context of the overall diagnostic picture he draws). In Holohan, the court found that where a claimant suffered from severe panic attacks, anxiety, and depression, evidence of some improvement did not mean that the claimant's impairments no longer seriously affected her ability to function in a workplace. Id. Simply because Nitschke showed some improvement during one examination does not nullify Dr. Henderson's ongoing assessments, based on a lengthy treating relationship, of her mental condition.

The ALJ's final two conclusions with regard to Dr. Henderson's October 2003 opinion are simply false. First, the ALJ asserted that the record did not contain any evidence that Nitschke had experienced episodes of decompensation of extended duration. AR 18. As described above, Dr. Henderson noted two episodes of decompensation as a result of workplace stress in October 2003, and one instance of being "on the edge" of decompensation as a result of initiating a new relationship in January 2003. Dr. Henderson also noted that Nitschke's episodes of decompensation were of extended duration when he wrote: "I cannot over emphasize how often the patient would be left with a lingering rage that would last for hours and even days, leaving the only recourse of extrication out of fear that she would lose control." AR 194. Second, the ALJ asserted that Dr. Henderson had reported that Nitschke's PTSD symptoms had not resulted in hospitalization during the period in issue. AR 18. The ALJ misstates the record in that Dr. Henderson wrote that he was "not aware of whether the patient's PTSD may have resulted in hospitalization." AR 160. Thus the ALJ did not rely on substantial evidence in discrediting Dr. Henderson's October 2003 opinion.

The Commissioner argues that Nitschke's ability to perform self-care independently, perform household chores and shopping, and socialize with others at Alcoholics Anonymous meetings is evidence that contradicts Dr. Henderson's finding that Nitschke meets a listing for her mental impairment and has marked difficulties in maintaining social functioning. Defendant's Brief at 6-7; AR 18. This court is not convinced. First, the fact that Nitschke was able to engage in some regular activities is not fatal to her claim unless the level of activity was inconsistent with her claimed limitations. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Here, Nitschke testified that she could do a few dishes, could not vacuum, only mopped on her hands and knees which took several hours, and infrequently shopped for groceries. AR 256. This level of activity is not probative of Nitschke's claim of mental impairment. Also, some limited level of activity is not fatal to Nitschke's assertion of disability. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (claimant does not need to be "utterly incapacitated" to be considered disabled). While Nitschke testified that she had friends that she could stay with occasionally to avoid being permanently homeless, Nitschke also testified that she had not been to an Alcoholics Anonymous meeting in six months because she "couldn't stand to sit in the rooms, you know. I couldn't stand out, people staring at me and taking my inventory." AR 257. She also wrote that she used engage in many Native American cultural and religious gatherings in Portland and surrounding areas, but was no longer doing so because too often she feels uncomfortable and fearful. AR 91. Thus the Commissioner's argument that Nitschke's activities of daily living contradict Dr. Henderson's conclusions is unfounded.

With regard to Dr. Henderson's February 2006 opinion, the ALJ gave little weight to the overall conclusion that Dr. Henderson could not imagine any work setting at that point that

Page 14 - OPINION AND ORDER

would not trigger Nitschke's PTSD symptoms to unworkable levels. AR 20, 201. The

Commissioner notes correctly that a physician's opinion of disability is not a legal opinion

establishing disability under the Social Security Act because that finding involves both a medical

and a vocational component. See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000).

However, considering the record as a whole which is required in evaluating the ALJ's decision,

this court finds that Dr. Henderson's February 2006 opinion was entitled to some weight based

on length of the treatment relationship, the nature and extent of that relationship, and the degree

to which his opinion is supported by medical evidence in the record. See Howard v. Heckler,

782 F.2d 1484, 1487 (9th Cir. 1986) (record as a whole must be considered to determine if the

Commissioner's decision is supported by substantial evidence); 20 C.F.R. §§ 404.1527(d),

416.927(d) (grounds for affording significant weight to treating physician's opinion).

      The ALJ did not provide the required "specific and legitimate" reasons for rejecting a

treating physician's opinions and conclusions. Because the ALJ rejected Dr. Henderson's

opinions based on incorrect legal standards, those opinions should be credited as true as a matter

of law. Lester, 81 F.3d at 834.

      Evidence should be credited and an immediate award of benefits directed when (1) the

ALJ failed to provide legally sufficient reasons for rejecting the opinion of a treating or

examining physician; (2) there are no outstanding issues that must be resolved before a

determination of disability can be made; and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited. Smolen v. Chater, 80 F.3d

1273, 1292 (9th Cir. 1996). Here, if Dr. Henderson's opinions are credited, the record shows that

Nitschke cannot sustain work activity and a finding of disability is appropriate.

Page 15 - OPINION AND ORDER

Mental Impairment that Meets or Equals a Listing

Nitschke argues that her mental impairment equals a listing for anxiety related disorders under § 12.06, supported by the medical opinion of Dr. Henderson.  The Commissioner disagrees.

The Listing of Impairments ("the listings") describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. §§ 404.1525(a); 416.925(a).  Most of these impairments are permanent or have lasted/are expected to last for a continuous period of at least twelve months. Id.  To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to his or her claim.  See §§ 404.1525, 416.925.  To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment "most like" the claimant's impairment.  See §§ 404.1526(a); 416.926(a).[4]  For mental impairments, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work.  20 C.F.R. Part 404, Subpart P, App. 1 § 12.00A.

In concluding that Nitschke's mental impairments did not meet or equal a listing, the ALJ found that her mental impairments resulted in only mild restrictions on activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining

_____

[4]The court notes that the terms "meet a listing" and "equal a listing" are often used interchangeably.

Page 16 - OPINION AND ORDER

concentration, persistence, and pace. AR 18.[5] Explicitly, the ALJ rejected Dr. Henderson's

October 2003 opinion that Nitschke's anxiety disorder met a listing under § 12.06. AR 159-161.

Dr. Henderson found that Nitschke met the "A" criteria in that she had "generalized persistent

anxiety accompanied by motor tension, autonomic hyperactivity (sick to stomach with diarrhea

upon awakening from an anxiety dream), apprehensive expectation (of losing control), and

vigilance and scanning (typical to PTSD in symptom "triggering" environments)." AR 193-94.

Dr. Henderson noted that Nitschke had fears of provoking situations, recurring panic, and

recurrent intrusive recollections, which are also part of the category A listing criteria. For the "B"

criteria, Dr. Henderson found that Nitschke had marked difficulties in maintaining social

functioning necessary in work situations, and repeated episodes of deterioration and

decompensation in work settings. AR 194. Because this court has credited Dr. Henderson's

October 2003 opinion, Nitschke's mental impairment meets or equals the listing for an anxiety

disorder as described in § 12.06 and she is disabled.

///

///

///

///

///

///

///

---

[5]The ALJ's specific reasons for finding that Nitschke's mental impairments did not meet or equal a listing are identical to the reasons asserted for discrediting Dr. Henderson's October 2003 opinion. See AR 18. Because those reasons were addressed above, they will not be revisited here.

Page 17 - OPINION AND ORDER

CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed and remanded

pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

Dated this _𝔅_ day of June 2007.

_Ann Aiken_

Ann Aiken
United States District Judge